**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-8059

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SYLVIA SAGARIBAY and JAVIER ARMANDO RUEDA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Western District of Texas

_____

(January 27, 1993)

Before POLITZ, Chief Judge, GARWOOD and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Sylvia Sagaribay (Sagaribay) was charged with conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846, and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(l). Javier Armando Rueda (Rueda), her codefendant, was charged with the same two offenses, and with being a convicted felon in possession of a firearm, in violation of l8 U.S.C. § 922(g)(l). Both were convicted on all counts after a non-jury trial. Both appeal their convictions. We affirm.

I.

On November 27, 1990, Detective Rodolfo Avila (Avila), of the El Paso Police Department, obtained, from a local justice of the

peace, a search warrant for 7283 J. C. Cramer Street, Apt. 8l in El Paso, Texas. The affidavit in support of the search warrant stated that Avila had received information from a confidential informant that Rueda, Sagaribay and two other individuals were in possession of heroin in that apartment. The apartment had a new solid wood door. So, before executing the warrant, Avila obtained a pass key from the manager of the apartment complex.

The next day, at about 10:00 a.m., Avila and three other state police officers arrived at the door of the apartment to execute the search warrant. Avila knocked on the door and yelled "Police officers with a search warrant." Simultaneously and without waiting for a response, Avila unlocked the door with the pass key and pushed it open. The door was difficult to open, because pieces of furniture had been pushed up against it.

Once in the apartment, the officers saw Sagaribay, Rueda, and another man sitting on the living room floor. Within an arm's length of the individuals the officers observed heroin, money, balloons, razor blades, scissors, and a dinner plate on the floor. In the same room, the officers found additional balloons packaged with heroin and a bag with over $6,000 cash in it. The officers also found a small baggy of marijuana and a Smith and Wesson .357 magnum revolver in the master bedroom. The officers found a total of 39.11 grams of heroin in the apartment.

Victor Maldonado (Maldonado), an agent of the Bureau of Alcohol, Tobacco and Firearms, interviewed Rueda at the police station about the gun seized by the police. Maldonado testified

2

that Rueda "told me he had bought [the handgun] a month prior at a flea market."  Maldonado also testified that he gave **Miranda** warnings to Rueda, and that Rueda orally waived his rights before making the statement.

## II.

On appeal, Sagaribay and Rueda both argue that the fruits of the search should have been suppressed because the officers failed to comply with 18 U.S.C. § 3109, the "knock and announce" statute, before entering the apartment.  In addition, Rueda challenges the admissibility of his confession on the ground that he did not voluntarily and knowingly waive his right to remain silent before giving the statement.  Sagaribay challenges the sufficiency of the evidence in support of her convictions.  We consider these arguments below.

## A.

Appellants' main argument is that the search in this case violated the Fourth Amendment protection "against unreasonable searches and seizures" because it violated the knock and announce requirements of § 3109.  Section 3109 provides that an officer executing a search warrant may break open a door only if "after notice of his authority and purpose, he is refused admittance." Texas has no statute similar to § 3109.  The district court determined that the state officers' conduct was proper under Texas law.  It also found that § 3109 did not apply to this case because "these were state officers executing a Texas search warrant."

3

The Fourth Amendment prohibits only unreasonable searches. **Bell v. Wolfish**, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("Wolfish"). The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. **Wolfish**, 441 U.S. at 559. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. **Wolfish**, 441 U.S. at 559.

Undoubtedly, the Fourth Amendment and § 3109 serve overlapping purposes. As the Supreme Court noted, Congress codified in § 3109 "a tradition embedded in Anglo-American law." **Miller v. United States**, 357 U.S. 301, 307, 313 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) (applying District of Columbia law, which was "substantially identical" to § 3109). Of this tradition, the Court said: "The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application." **Miller**, 357 U.S. at 313. Section 3109 serves several Fourth Amendment interests. Among those are (1) protecting law enforcement officers and household occupants from potential violence; (2) preventing unnecessary destruction of private property; and (3) protecting people from unnecessary intrusion into their private activities. **United States v. Nolan**, 718 F.2d 589, 596 (3rd Cir. 1983).

While the provisions overlap, the extent of that overlap is not clear. In **Ker v. California**, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Court had an opportunity to clarify the

4

relationship of § 3109 to the Fourth Amendment. A plurality refrained from imposing an inflexible Fourth Amendment "knock and announce" rule incorporating in all circumstances the particular procedures delineated in § 3109. Instead, it held that exigent circumstances justified the search. **Ker**, 374 U.S. at 38-41.

Four dissenters (Chief Justice Warren and Justices Brennan, Douglas, and Goldberg) would have reached the issue and held that "[t]he protections of individual freedom carried into the Fourth Amendment . . . undoubtedly included this firmly established requirement of an announcement by police officers of purpose and authority before breaking into an individual's home." **Ker**, 374 U.S. at 49. In their view, "the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside . . . are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." **Ker**, 374 U.S. at 47.

Similarly, in **United States v. Mueller**, 902 F.2d 336, 343-344 (5th Cir. 1990), we declined to consider this issue because the search in question was justified by exigent circumstances. In dicta, we have said that searches in violation of § 3109's knock and announce rule are unreasonable because "this statute is designed to serve Fourth Amendment interests . . . ." **United**

States v. Cadena, 585 F.2d 1252, 1264 n. 28 (5th Cir. 1978), overruled on other grounds, **United States v. Michelena-Orovio**, 719 F.2d 738, 756-57 (5th Cir. 1983) (en banc).

Several circuits have found a "knock and announce" requirement in the Constitution, though often in dicta and sometimes without close attention to the plurality opinion in **Ker**.[1]  **See United States v. Francis**, 646 F.2d 251, 258 (6th Cir.), **cert. denied**, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981) ("Though each case by itself is less than compelling, their conclusion has been unanimous: the Fourth Amendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances.") (dicta).

In a case similar to ours, the Third Circuit closely analyzed the relationship of § 3109 to the Fourth Amendment. **United States v. Nolan**, 718 F.2d 589, 602 (3rd Cir. 1983).  In **Nolan**, the Third Circuit followed the **Ker** plurality, which it read as rejecting "the proposition that the Fourth Amendment mandates a knock and announce requirement with precise and narrowly defined exceptions, although a failure by police to knock and announce could, depending on the circumstances, violate the more general Fourth Amendment reasonableness requirement for any arrest." **Nolan**, 718 F.2d at 601.  **Nolan** involved a daytime execution of a valid search warrant

_____

[1]**See, e.g., United States v. Baker**, 638 F.2d 198, 202 n.7 (10th Cir. 1980) ("knock-announce" rule incorporated "to some extent" in Fourth Amendment) (dicta); **United States v. Valenzuela**, 596 F.2d 824 (9th Cir.) (same) (dicta), **cert. denied,** 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); **United States v. Andrus**, 775 F.2d 825, 844 (7th Cir. 1985). **Rivera v. United States**, 928 F.2d 592, 606 (2d Cir. 1991) (merger of § 3109 and Fourth Amendment).

in which a motel manager opened the door with a passkey and the officers announced their identity as they entered. The Third Circuit concluded that these circumstances did not "give rise to the kind of unreasonable seizure proscribed by the Fourth Amendment." **Nolan**, 718 F.2d at 602. **See also United States v. Daoust**, 728 F. Supp. 41, 49, 50 (D. Me. 1989), **aff'd**, 916 F.2d 757 (1st Cir. 1990) ("The constitutionality of a forcible entry does not depend upon ritual adherence to the statutory 'knock and announce' procedures of section 3109.").

Like the Third Circuit, we decline to hold that the Fourth Amendment inflexibly incorporates the requirements of § 3109 into its reasonableness requirement. Considering the totality of the circumstances in this case, including the interests protected by § 3109, this was not an unreasonable search under the Fourth Amendment. By announcing their identity and purpose as they entered the door, the officers sought to prevent the possibility of unnecessary violence. By using a pass key, the officers prevented unnecessary destruction of private property. By conducting the search in the daytime, after obtaining a valid search warrant, the officers minimized the risk that they would unnecessarily intrude into the defendants' private activities.

The officers also reasonably considered the possibility that material evidence would be destroyed. The district court found that the officers had probable cause to believe that heroin was present in the apartment. During the three hours before executing the warrant, the officers saw several people, including a known

7

addict, enter and leave the apartment. We have considered circumstances similar to these to be exigent circumstances that would excuse federal officers from compliance with § 3109. **United States v. Carter**, 566 F.2d 1265, 1269 (5th Cir.), **cert. denied,** 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978). ("[H]eroin is a readily disposable item."). We need not decide whether these circumstances rose to the same level; the search was reasonable even if we consider them to be only mild exigencies. This search did not violate rights reserved to the defendants under the Fourth Amendment.

B.

Sagaribay and Rueda suggest that § 3109 applies of its own force to state police officers executing state authorized searches and seizures if the evidence they seize is used in a federal prosecution. In **Preston v. United States**, 376 U.S. 364, 366, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964) ("Preston"), the Supreme Court held that evidence obtained by state officers is only admissible against a defendant in a federal trial if the search and seizure were reasonable under the Fourth Amendment. The Eighth Circuit held that **Preston** does not require the exclusion of evidence seized by state officers and offered in a federal prosecution, as long as the seizure was reasonable under the Fourth Amendment. **United States v. Moore**, 956 F.2d 843, 845-47, and 847

8

n. 4 (8th Cir. l992) (citing cases in agreement).  We agree with this conclusion and therefore reject appellants' argument.[2]

C.

Rueda next argues that the district court erroneously admitted Maldonado's testimony that Rueda "told me he had bought [the .357 magnum revolver] a month prior [to Rueda's arrest] at a flea market."  Before trial, Rueda objected to admission of the statement, contending first, that he had not made the statement and second, that, if he had made the statement, he had done so during a custodial interrogation without having knowingly and voluntarily waived his right to remain silent.  On appeal, Rueda argues that the district court refused to consider his constitutional argument.

At the suppression hearing, Maldonado testified that he read to Rueda the contents of a statement of rights card.  Agent Maldonado further testified that Rueda orally waived those rights.  Rueda testified that he did not make the statement and was not given any **Miranda** warnings.  He also testified that he was "aware then of [his] right not to say anything."

In its order denying Rueda's motion to suppress, the district court found that Rueda "made it clear that he fully understood his right to remain silent."  At trial, when objection was made to admission of the statement, the district court clarified the difficulty in Rueda's position--if the district court disbelieved

---

[2]In passing, Rueda suggests that the search was unlawful under Texas law.  This argument has no merit.  **See Ellerbee v. State,** 631 S.W.2d 480, 484 (Tex. Crim. App. 1981); Tex Code Crim. Proc. Ann. Art. l8.06(b)(Vernon 1991).

Rueda's testimony that he made no statement to Maldonado, it would have no reason to believe Rueda's fallback position that Maldonado did not advise him of his right to remain silent.

> THE COURT: "[T]he only evidence in this trial today so far about this transaction is from this witness who says, 'I gave him Miranda warnings.'"

> MR. ROBERT: ". . . I would like the Court to take judicial notice of the testimony of Mr. Rueda in the suppression hearing."

> THE COURT: "If I take judicial notice of that, do I believe part of it and disbelieve the rest; is that what you're saying?"

The district court had to choose whether to believe Rueda's account of the events at the police station or Maldonado's account of those events. The court apparently concluded that the separate accounts were so inconsistent that it could not believe half of one story and half of the other story. The district court believed Maldonado's account, not Rueda's.

Despite this finding, Rueda argues that the district court perceived Rueda's arguments as contradictory and therefore ignored his constitutional argument. He directs our attention to the district court's order denying Rueda's motion to suppress, where the court said that Rueda was "hardly in a position to challenge the admissibility of the non-existent statement on constitutional grounds." The district court had already found that Rueda had voluntarily and knowingly waived his right to remain silent. So we regard the district court's subsequent statement as an afterthought, not as a refusal to consider Rueda's constitutional

10

argument. The district court did not err in admitting the statement.

D.

Sagaribay challenges the sufficiency of the evidence in support of her convictions. In reviewing this challenge, our task is to determine whether any reasonable finder of fact could have found Sagaribay guilty on the evidence presented. In considering the permissible inferences we must view the evidence in a light most favorable to the verdict. **United States v. Bethley**, 973 F.2d 396, 399 (5th Cir. 1992).

The offense of possession of heroin with intent to distribute required proof beyond a reasonable doubt that (1) a conspiracy existed, (2) Sagaribay knew of the conspiracy, and (3) she voluntarily joined it. **United States v. Mollier**, 853 F.2d 1169, 1172 (5th Cir. 1988). The substantive offense of possession with intent to distribute required proof beyond a reasonable doubt that Sagaribay (1) knowingly (2) possessed heroin (3) with intent to distribute. **United States v. Molinar-Apodaca**, 889 F.2d 1417, 1423 (5th Cir. 1989).

The evidence showed that apartment 81 was registered in Sagaribay's name. Several people entered and left Sagaribay's residence during the three hours before her arrest. When the officers entered the apartment, Sagaribay was sitting on the floor immediately next to a plate with heroin, balloons, razor blades, scissors, and money on it. Detective Avila testified that heroin is normally packaged in balloons of the type found in the

11

apartment. The search of the living room further revealed a grocery bag that contained over $6,000 cash and more balloons packaged with heroin.

The above evidence adequately supports Sagaribay's convictions for conspiracy to possess heroin with intent to distribute and possession of heroin with intent to distribute.

### III.

For the reasons stated above, we affirm the district court's judgment.

AFFIRMED.