**UNITED STATES of America, Appellee,**

v.

**James BROWN, Defendant–Appellant.**

**No. 1264, Docket 93–1557.**

United States Court of Appeals,
Second Circuit.

Argued March 4, 1994.

Decided April 12, 1995.

---

William B. Darrow, Asst. U.S. Atty., Burlington, VT (Charles R. Tetzlaff, U.S. Atty. for the D. of VT, David V. Kirby, Burlington, VT, on the brief), for appellee.

Mark B. Gombiner, New York City (The Legal Aid Soc., Federal Defender Division, New York City, on the brief), for defendant-appellant.

Before: KEARSE and LEVAL, Circuit Judges, and GLASSER, District Judge.*

GLASSER, District Judge:

James Brown appeals from a judgment of conviction entered on July 26, 1993 following a jury trial in the United States District Court for the Eastern District of Vermont (Billings, J.). He was convicted of one count of conspiracy to distribute cocaine and heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846; two counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1); one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1); one count of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g) and 924(e); one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) and one count of possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). He was sentenced to a total term of imprisonment of 322 months consisting of concurrent terms of 262 months on the first seven counts and a consecutive term of 60 months on count eight (possessing a firearm during a drug trafficking offense). In addition, he was sentenced to a six year term of supervised release and was directed to pay a mandatory special assessment of $400.

Brown contends that the district court erred in denying his pretrial motion to suppress evidence seized from his apartment in violation of 18 U.S.C. § 3109 (the "knock and announce" statute) and the Fourth Amendment to the United States Constitution and in failing to suppress statements obtained which, he contends, were the fruits of the unlawful search. Brown also contends that he was improperly sentenced as an armed career criminal for the reason that the government failed to prove he was a thrice-convicted felon as a basis for invoking § 4B1.4 of the United States Sentencing Guidelines, and that the district court erred in considering him a career offender pursuant to U.S.S.G. § 4B1.1 based upon a finding that he violated 21 U.S.C. § 860(a) (distribution of a controlled substance within 100 feet of a school).

*Background*

On March 18, 1992, a confidential informant ("CI") reported to detective John C. Lewis of the Burlington, Vermont Police Department that co-defendant Timothy Ellison who lived at 11 Cedar Street in Burlington had sold crack and heroin from his apartment, both of which the CI had seen there. Living in that apartment with Ellison were his cousin "Jimmy" (the defendant Brown) and co-defendant Patricia Miles who was Ellison's girlfriend, both of whom were also involved in drug trafficking. Detective Lewis also learned from the CI that Ellison and Brown were associated with a person named Mike who sold heroin from a nearby apartment. The CI had purchased cocaine from Mike in the past and was once visited by

---

* Honorable I. Leo Glasser, of the United States District Court for the Eastern District of New York, sitting by designation.

Mike, Ellison and another who came with a pump-action shotgun to collect for a drug related debt the CI owed Mike. Over the course of the next few weeks, the CI attempted to make several controlled purchases of drugs at the Cedar Street apartment. On April 2, 1992, for example, the CI, wearing a body-wire, attempted to purchase cocaine at the Cedar Street apartment. He was surveilled on that occasion by Detective Lewis, by Joseph Harrington, an agent of the Bureau of Alcohol, Tobacco and Firearms ("BATF"), and another detective. Patricia Miles was in the apartment. Ellison and Brown were not. Miles showed four bundles of heroin to the CI and told him that Brown was at a laundromat nearby. The CI located Brown and purchased cocaine from him at a point across the street from an elementary school. The CI, on subsequent days, also made controlled purchases of heroin and cocaine from Ellison and his associates. On two of those occasions he was in the apartment, secretly recording conversations with the occupants by means of a body-wire he was wearing.

In the course of his investigation, Detective Lewis ascertained that Ellison had a criminal record in New York reflecting arrests for possession of firearms, robberies, assaults, possession of stolen property and drugs. The CI also related to Detective Lewis his belief that Brown possessed a gun.

On April 6, 1992, Detective Lewis made an application to a Vermont state court judge, Matthew I. Katz, for a warrant to search the apartment at 11 Cedar Street and the persons of its occupants, Ellison, Brown and Miles. In a detailed affidavit in support of the application, Detective Lewis set out more fully the facts outlined above. Finding the requisite probable cause, Judge Katz granted the application and authorized the search and seizure between 6:00 A.M. and 10:00 P.M. of illicit drugs, drug paraphernalia, drug money and firearms used to facilitate the drug dealing.

In the early hours of April 7, 1992, Detective Lewis assembled a search team at the Burlington police headquarters made up of one Drug Enforcement Administration Agent; two BATF agents; two federal marshals and three members of the Burlington Police Department. He briefed them on the investigation and assigned them to their respective duties. As part of the briefing, Lewis showed a photograph of Ellison to the team and informed them that Ellison had a criminal record. At approximately 6:00 A.M. the team arrived at the Cedar Street address and positioned themselves outside Ellison's ground floor apartment. Detective Lewis testified that he elected to execute the warrant so early in the morning to assure the presence of the defendants. The testimony relating to the events that followed was not entirely consistent in all respects as the following summary will demonstrate.

> I'm going to deny the motion to suppress on the basis of my finding that the officers in this case did knock, and that because of that knocking, they had good reason to believe that the people who were inside the apartment would be aware of the presence of people outside knocking on the door, even though it may well have been that the knock did not wake anybody in the apartment, and from the officers' perspective, they could then and I think would be reasonable in believing that the occupants of the apartment might well be engaged in the destruction of drugs, and I think that they also had every right to believe that they were in potential danger and had to act quickly.

> So what you really have here is a compliance with the knock and announce rule ... because the break-in was virtually simultaneous with the announcement, but there were sufficient exigent circumstances, in my view, to justify the collapse of time, that is the short period of knocking and the almost simultaneous announcement and break-in.

Special Agent Thomas Doud of the Drug Enforcement Administration ("DEA") who participated in the execution of the search warrant was designated to interview Brown immediately after the arrests were made. In an automobile outside the Cedar Street apartment, Doud advised Brown that he was under arrest for violating the narcotics laws, informed him of the investigation that had been conducted and the evidence acquired

prior to his arrest, discussed the possibility of Brown's cooperation, and gave him the warnings prescribed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which Brown stated he was familiar with and understood. When asked to sign a waiver of rights form at that time, however, Brown refused but indicated that he was willing to talk. At the Burlington police station to which the defendants were subsequently taken, Brown was interviewed by James Mercer, a special agent of BATF, and indicated his willingness to speak. Mercer again advised Brown of the *Miranda* warnings and requested him to sign a waiver of rights form which he did. Brown then made a written statement which he also signed and in which he confessed to his involvement in drug trafficking with Ellison and Miles and to possessing a gun to protect his drug money and himself.

At the conclusion of the suppression hearing, the judge presiding (Parker, J.) found that Brown had been given the necessary *Miranda* warnings, that Brown understood them and with that understanding, knowingly and voluntarily made the statements he sought to suppress. His motion in that respect was denied and that determination has not been appealed.

Ellison and Miles pleaded guilty to distributing cocaine and to possessing with intent to distribute heroin. Brown was convicted of all counts after a jury trial. The presentence report ("PSR") classified Brown as an armed career criminal pursuant to 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4. He was also classified as a career offender pursuant to U.S.S.G. § 4B1.1 which was invoked based upon a finding that Brown violated 21 U.S.C. § 860. An offense level of 34 and a criminal history category of VI prescribed by U.S.S.G. §§ 4B1.1 and 4B1.4(c)(2) was thus arrived at for which a sentencing range of 262–327 months was prescribed. That range was enhanced to 322–387 months by a consecutive term of 60 months mandated by 18 U.S.C. § 924(c)(1).

Brown filed written objections to the PSR. He contended that the armed career criminal enhancement of U.S.S.G. § 4B1.4 was unwarranted because the government failed to prove that Brown's 1970 conviction for attempted robbery in the third degree qualified as a "violent felony" within the meaning of 18 U.S.C. § 924(e)(1) for the reasons that (1) no certified copy of that conviction was produced to prove that conviction, but unspecified "court records" were relied upon instead; (2) the record of the New York State Division of Criminal Justice given to the defendant stated "no disposition reported" for the offense; (3) that record showed that Brown was sentenced for that offense to a term of "1 yr max," which was consistent with a sentence for a conviction of a misdemeanor, and (4) when Brown was convicted of a subsequent felony, he was not sentenced as a second felony offender. He also objected to the application of 21 U.S.C. § 860(a) by which a finding of career offender status in accordance with U.S.S.G. § 4B1.1 was buttressed.

A hearing was held on these issues. As regards the 1970 conviction, the government proffered a prior PSR prepared by the New York City Department of Probation which reflects an indictment number for a charge of attempted robbery 3rd and a sentence imposed for that offense of one year. That PSR also states that Brown "... has two prior felony convictions from this court for Attempted Robbery III, for which he was sentenced to One Year, New York City Penitentiary in 1970 ..." The government also proffered a report prepared by the Federal Bureau of Investigation which similarly records his conviction of Attempted Robbery III for which he was sentenced in 1970 to one year. The defendant offered no evidence to controvert the government's proffers which is not to say or even intended to suggest that the burden of proof ever shifted from the government.

The district court determined that Brown was an armed career criminal in accordance with 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 and, in the alternative, that he was a career offender in accordance with U.S.S.G. § 4B1.1. An offense level of 34 and a Criminal History Category of VI based upon these determinations yielded a guideline range of 262 to 327 months. A consecutive term of 60 months mandated by 18 U.S.C. § 924(c)(1)

resulted in a sentence of 322 months to be followed by a six year term of supervised release. This appeal followed.

### Discussion

The standard of review observed by this court in evaluating the district court's ruling in a suppression motion is "clearly erroneous" as to that court's factual findings viewing the evidence in the light most favorable to the government and *de novo* as to questions of law such as whether the manner in which the warrant was executed was justified.

### A. *Applicability of Federal or State Law*

■ At the threshold of a determination of the validity of the execution of the search warrant is the issue of whether 18 U.S.C. § 3109 is applicable at all. The government contends that the statute should have no application where a state official supervises the execution of a search warrant issued by a state judge. In this circuit, that issue has been laid to rest in *United States v. Pforzheimer*, 826 F.2d 200 (2d Cir.1987), among others. In that case Vermont state troopers obtained a search warrant from a Vermont state court. The warrants were executed, the defendant was arrested and charged with two felony violations of Vermont's marijuana laws in the Vermont District Court. Federal complaints were issued thereafter and the state charges were dropped in deference to the federal prosecution. On appeal following his conviction, the defendant argued that the district court erroneously applied federal constitutional law in denying a motion to suppress which would have been granted had Vermont law been applied. The circuit court framed the issue as follows: "We are presented here with the novel issue of whether the state or federal exclusionary rule should be applied in ruling on a motion to suppress evidence in a criminal trial in federal court when the evidence in question was solely the product of a state investigation." 826 F.2d at 202. The court held that the suppression motion must be resolved by the application of federal constitutional law. That federal law is applicable in a federal prosecution even when state police officers were involved in

the case is the lesson derived from the combined effect of *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) and *Olmstead v. United States*, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). Among the policy considerations dictating that result is the importance that evidentiary rules be applied uniformly in federal courts. *See also United States v. Melendez*, 1995 W.L. 29818 (2d Cir. January 26, 1995); *United States v. Smith*, 9 F.3d 1007 (2d Cir.1993) (federal law applicable to federal criminal prosecutions even though the underlying investigation conducted solely by state officers); *United States v. Turner*, 558 F.2d 46 (2d Cir.1977) (participation by federal officer in execution of state search warrant made the search federal because federal officers had a hand in it).

### B. *Knock and Announce*

■ Having determined that § 3109 is applicable, we turn to Brown's contention that the evidence seized from his apartment should have been suppressed because seized in violation of that statute, which provides:

> The officer may break open any outer door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The "knock and announce" rule embodied in § 3109 has ancient common law antecedents. The most frequently cited perhaps is *Semayne's Case*, 77 Eng.Repr. 194 (K.B. 1603) in which the requirement was announced, at page 195, that "[i]n all cases where the King is party, the sheriff (if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. *But before he breaks it, he ought to signify the cause of his coming, and to make request to open doors....*" *See Miller v. United States*, 357 U.S. 301, 308, 78 S.Ct. 1190, 1195, 2 L.Ed.2d 1332 (1958). Whether the Fourth Amendment incorporates the "knock and announce" rule is debatable. *Cf., e.g.,* Charles Patrick Garcia,

*The Knock and Announce Rule: A New Approach to the Destruction of Evidence Exception*, 93 Col.L.Rev. 685, 688 (1993) ("... the Court held that the Fourth Amendment of the Constitution incorporated the 'knock and announce' rule as part of the reasonableness demanded of a search....") with *Wilson v. State of Arkansas*, 317 Ark. 548, 878 S.W.2d 755, 758 (1994) ("There is no authority for Ms. Wilson's theory that the knock and announce principle is required by the Fourth Amendment"), *cert. granted*, —— U.S. ——, 115 S.Ct. 571, 130 L.Ed.2d 488 (1994), and *United States v. Nolan*, 718 F.2d 589, 601 (3d Cir.1983) (The *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) plurality "would appear to reject the proposition that the fourth amendment mandates a knock and announcement requirement with precise and narrowly defined exceptions, although a failure by police to knock and announce could, depending on the circumstances, violate the more general fourth amendment reasonableness requirement for any arrest"); *see also United States v. Sagaribay*, 982 F.2d 906, 909 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 160, 126 L.Ed.2d 120 (1993).

■ The interests sought to be protected by § 3109 are not debatable and have been expressed to be (1) the reduction of potential for violence to both the police officer and the occupants of the house into which entry is sought; (2) the needless destruction of private property; and (3) a recognition of the individual's right of privacy in his house. *See, e.g., United States v. Bustamante–Gamez*, 488 F.2d 4, 9 (9th Cir.1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), and Meier, Annotation, *What Constitutes Violation of 18 U.S.C. § 3109 Requiring Federal Officer to Give Notice of His Authority and Purpose Prior to Breaking Open Door or Window or Other Part of House to Execute Search Warrant*, 21 A.L.R.Fed. 820, § 2 (1974 & Supp.1994). It is also not debatable that exceptions to the literal application of § 3109 have been engrafted upon that statute by countless state and federal cases. *See generally* 21 A.L.R. Fed. 820 and 93 Col.L.Rev. 685, *supra.* Among the exceptions which are relevant for this appeal is that which recognizes that "exigent circumstances" will excuse non-compliance with the statute. *See, e.g., United States v. Spinelli*, 848 F.2d 26, 28 (2d Cir. 1988).

■ Our court has looked to six touchstones for determining the existence of exigent circumstances. Those are: "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry." Those factors are "merely illustrative, not exhaustive, and the presence or absence of any one factor is not conclusive." *United States v. Gordils*, 982 F.2d 64, 69 (2d Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1953, 123 L.Ed.2d 657 (1993); *United States v. MacDonald*, 916 F.2d 766, 769–70 (2d Cir. 1990), *cert. denied*, 498 U.S. 1119, 111 S.Ct. 1071, 112 L.Ed.2d 1177 (1991). In addition to those factors, federal courts, including our own, have considered two more, namely, a reasonable belief by law enforcement officers that (1) the targets of their investigation are armed; and (2) quick action is necessary to prevent the destruction of evidence. An application of those factors to the facts of this case drives us to conclude that the district court was correct in finding that exigent circumstances justified the denial of the motion to suppress. The offense with which the targets of the investigation were to be charged was serious and of a violent nature—the trafficking in crack cocaine and heroin and the use of a firearm incident to that trafficking; (2) the suspects were reasonably believed to be armed, given the attempt to collect a drug related debt from the confidential informant with a pump-action shotgun and Detective Lewis' knowledge of Ellison's criminal record; (3) there was a clear showing of probable cause articulated in an affidavit in support of the search warrant which was issued by a neutral judicial officer; (4) there was strong reason to believe that the targets of the investigation were in the apartment to be searched; (5) a

reasonable belief that the targets of the investigation were armed; and (6) the drugs which were the object of the search were easily capable of being destroyed. As to the last factor, the dissent lays stress upon the district court's finding that the officers did not have "any facts when they were about to enter the apartment that would suggest that the persons within were engaged in any activity to destroy evidence." One justification for the exigent circumstance exception which excuses literal compliance with § 3109 is the prevention of the destruction of evidence which would follow upon compliance. *See, e.g., United States v. Barrientos*, 758 F.2d 1152, 1159 (7th Cir.1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 810, 88 L.Ed.2d 785 (1986) in which the court held that exigent circumstances justified a no-knock search where the police had reason to believe the defendants were armed and dangerous and had information that the occupants of the premises had possession of cocaine *which could have been destroyed or disposed of quickly had the police given warning of their presence and their purpose.* The record here clearly reflects that Detective Lewis knew that drugs could be readily disposed of (Tr. 40) and that the object of the search was cocaine and possibly heroin in powder form. (Tr. 76). Judge Parker's finding as regards that factor and the other factors in addition to his finding a legitimate concern of the officers for their own safety, were not clearly erroneous. His findings clearly pass the test for determining the existence of exigent circumstances which "is an objective one that turns upon the district court's examination of the totality of the circumstances confronting law enforcement agents in the particular case." *United States v. MacDonald*, 916 F.2d at 769; *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir.1991); *United States v. Gordils*, 982 F.2d at 69. *Cf. United States v. Spinelli*, 848 F.2d 26, 29 (2d Cir.1988) (exigent circumstances may excuse noncompliance with the knock-and- announce requirement only where (1) the officers believe there is an emergency situation and (2) their belief is objectively reasonable). Whether the test is a purely objective one or, consists of an objective and a subjective component, in either case, the test has been satisfied. It is also significant to note that the various factors that go into the exigent circumstance equation are, as previously noted, illustrative rather than exhaustive and that the presence or absence of any one of them is not determinative.

A cursory survey of the extent to which federal courts have been called upon to decide the violation or excused noncompliance of § 3109 reveals approximately 381 reported cases. The number of such cases which have not been reported and which were, for example, decided from the bench without a formal written opinion, as was the case here, can only be surmised. Those cases not infrequently reflect the struggle to distinguish one case from another and to discover the immutable principles that would provide the correct Fourth Amendment and § 3109 answers to the case at hand. A frequently cited observation in this regard was made by La Fave, in *"Case by Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma*, 1974 S.Ct.Rev. 127, 141: "A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.' " *See New York v. Belton*, 453 U.S. 454, 458, 101 S.Ct. 2860, 2863, 69 L.Ed.2d 768 (1981); *Ker v. California*, 374 U.S. 23, 45, 83 S.Ct. 1623, 1646, 10 L.Ed.2d 726 (1963) (Harlan, J., concurring) ("... the Court's decisions in the realm of search and seizure are hardly notable for their predictability"); and Akhil Reed Amar, *Fourth Amendment First Principles*, 107 Harv. L.Rev. 757 (1994); Scott E. Sundby, *Everyman's Fourth Amendment: Privacy or Neutral Trust Between Government and Citizen?*, 94 Col.L.Rev. 1751 (1994). Many of the cases drawing subtle nuances and hairline distinctions are collected in Annotation, 21 A.L.R.Fed. 820, *supra.*

In the final analysis, the cases have striven and will continue to strive with resolving the tension between the barrier the Fourth Amendment erects against government intrusion for the benefit of those who value

privacy and wish to live peacefully, and the barrier behind which the drug dealer will try to hide. *See* 94 Col.L.Rev. at 1808. As we have indicated, in our view, the district court correctly decided against maintaining the barrier behind which the drug dealers would hide.

*Ker v. California, supra,* quoted with approval the opinion of Justice Traynor in *People v. Maddox,* 46 Cal.2d 301, 294 P.2d 6, *cert. denied,* 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956) which involved Cal.Penal Code § 844 which like § 3109 permits peace officers to break into a dwelling place for the purpose of arrest after demanding admittance and explaining the purpose for which admittance is desired. Responding to a contention akin to that advanced by the appellant here, Justice Traynor wrote at 46 Cal.2d at 306, 294 P.2d, at 9, in terms which speak to this case, as follows:

> It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. (Citations omitted). Without the benefit of hindsight and ordinarily on

the spur of the moment, the officer must decide these questions in the first instance.

Echoing those observations many years later, this court wrote, in *United States v. Manning,* 448 F.2d 992, 1000–01 (2d Cir.), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971) (en banc):

> If we were writing on a clean slate, it would seem that when an officer knocks on the door of an apartment occupied by an experienced narcotics violator, which is reasonably believed by him to be so, and clearly identifies himself as a federal agent, there is sufficient compliance with the spirit of the statute [§ 3109] even if perhaps not with the strict letter. A knock is at least a request for entry, and a trafficker in narcotics who has been told that this is being made by a Federal agent can have no real doubt that the purpose is arrest, search or both, or that, if the request is not honored, something more will speedily follow.[1]

*See also United States v. Artieri,* 491 F.2d 440 (2d Cir.), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 670 (1974); *Rodriguez v. Butler,* 536 F.2d 982 (2d Cir.), *cert. denied,* 429 U.S. 943, 97 S.Ct. 362, 50 L.Ed.2d 313 (1976); *United States v. Bonner,* 874 F.2d 822 (D.C.Cir.1989).

The prescriptive prerequisites stated by the dissent, (citing *United States v. Spinelli,* 848 F.2d 26, 29 (2d Cir.1988)) as warranting a recognition of exigent circumstances are unduly restrictive. Not accounted for are the factors recited in *United States v. Gordils* and *United States v. MacDonald, supra,* none of which are engaged by the excerpted portions of the district court's findings listed in the dissent. Our ruling does not adopt the principle that the execution of a warrant in search of narcotics in premises where an occupant is believed to be armed and has a known criminal record of violent offenses, need not comply with § 3109. We simply hold that the totality of the circumstances within which the findings of the district court were made and which do engage the exigent

---

1. *Maddox, Manning* and others are but thoughtful and earnest attempts to "temper ... doctrinaire logic with a little practical wisdom" at the risk of converting the "constitutional Bill of Rights into a suicide pact." *Terminiello v. Chicago,* 337 U.S. 1, 37, 69 S.Ct. 894, 911, 93 L.Ed. 1131 (1949) (Jackson, J., dissenting). *See also United States v. Bustamante–Gamez,* 488 F.2d 4 (9th Cir.1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

circumstance factors of *MacDonald* and *Gordils* were not clearly erroneous. The cases upon which the dissent relies could be cited in support of that holding. For example, in *United States v. Nabors*, 901 F.2d 1351, 1354 (6th Cir.), *cert. denied*, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990), the Court upheld a search which did not comply with § 3109 "when there were two exigent circumstance grounds; first, the defendants were believed to be armed and dangerous; second, the officers had information that the defendants had substantial quantities of drugs which could be easily disposed of." In *United States v. Lucht*, 18 F.3d 541 (8th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994), the court wrote, at p. 549: "Exigent circumstances will excuse non-compliance with the knock and announce requirement when the officers, 'after considering the *particular* facts regarding the premises to be searched and the circumstances surrounding the execution of the warrant,' reasonably believe there is an urgent need to force entry. *United States v. Stewart*, 867 F.2d 581, 584 (10th Cir.1989); *see United States v. Spinelli*, 848 F.2d 26, 29 (2d Cir. 1988). The need to force entry may result from danger to the safety of the entering officers or from the imminent destruction of evidence. *See Bonner*, 874 F.2d at 826. The degree of exigency required to justify a departure from strict compliance with Section 3109 varies with the degree of the departure."

### C. *The Sentence*

■ The defendant contends that he was improperly adjudicated an armed career criminal because the government failed to prove that he had the requisite number of criminal convictions.

The defendant was convicted of, among other offenses, a violation of 18 U.S.C. § 922(g) which makes it unlawful for anyone who has been convicted of a crime punishable by imprisonment for more than one year to possess any firearms. 18 U.S.C. § 924(e) provides that if a person violates § 922(g) and has three previous convictions for a violent felony or serious drug offense, or both, committed on different occasions, he shall be fined up to $25,000 and imprisoned for not less than 15 years. U.S.S.G. § 4B1.4 provides that a defendant who is subject to an enhanced sentence under § 924(e) is an armed career criminal and punishable more severely.

Brown was sentenced to imprisonment for 322 months arrived at as follows: 262 months concurrent on Counts 1–7 and 60 months consecutive to Counts 1–7 on Count 8. That sentence was based upon the PSR finding that the defendant was an armed career criminal in accordance with § 924(e) and that pursuant to U.S.S.G. § 4B1.4(b) and a criminal history of category of VI his offense level was 34, yielding a guideline range of 262 to 327 months on each count. In addition, 18 U.S.C. § 924(c)(1) required the imposition of a consecutive term of 5 years.

As to the armed career criminal enhancement, the PSR recounted a criminal history that included three violent felony convictions in New York: (1) attempted robbery–3rd, in 1970; (2) robbery in 1972; and (3) assault–2nd in 1987.

At sentencing, the defendant objected to the PSR's finding that he had more than two prior violent felonies which made him an armed career criminal. He contended that the government had not sustained its burden of proof as to the 1970 conviction of attempted robbery 3rd relying only, as it did, not on a certified copy of his conviction, but on a presentence report prepared in 1982 by the New York City Department of Probation in connection with another of the defendant's criminal convictions. That report lists the 1970 conviction as "ATT. Robbery III." In a narrative description of Brown's criminal history, that report states that "[h]e has four misdemeanor convictions and two prior felony convictions from this court for Attempted Robbery III, for which he was sentenced to One Year, New York City Penitentiary in 1970 and for Robbery and Grand Larceny for which he was sentenced to five to fifteen years and two to six years (concurrent) in January of 1973." A report prepared by the Federal Bureau of Investigation's Identification Division also listed Brown's 1970 conviction as "Att. Rob.III." That document was also before the court at sentencing.

It was not disputed that the crime of Attempted Robbery 3rd is a crime punishable under §§ 70, 110.05, 160.05 of the New York Penal Law by imprisonment up to four years and is a "violent felony" as defined in U.S.S.G. § 4B1.4 and 18 U.S.C. § 924(e)(2)(B). The facts underlying the 1970 conviction as recounted in the presentence report were not disputed by Brown, namely, that a woman was knocked down and robbed and that he was initially charged with the more serious offense of Robbery–2nd.

The issue posed by the defendant by clear implication, if not explicitly, is the propriety of the district court's reliance upon the presentence report of the New York City Department of Probation and the information supplied by the Identification Division of the F.B.I. in concluding that Brown was an armed career criminal. In this regard, it is important to note that Rule 1101(d)(3), Fed. R.Ev. provides that the rules of evidence do not apply to sentencing proceedings. 18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." And finally, U.S.S.G. § 6A1.3 provides in relevant part that "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."

■ Brown correctly asserts that the government bears the burden of establishing (by a preponderance of the evidence), the existence of prior violent felony convictions when seeking a sentence enhancement pursuant to U.S.C. § 924(e). It is clear that the government may discharge that burden by any relevant evidence having sufficient indicia of reliability. The 1982 presentence report prepared by a New York probation officer based upon prior New York convictions for use by a New York court in imposing sentence upon Brown may similarly be used by a federal court in Vermont with justifiable confidence in its reliability. The fact that a certified copy of Brown's 1970 conviction may have been more desirable, does not detract from the reliability of the information before the court or from its justifiable reliance upon that information. *United States v. Paleo,* 967 F.2d 7, 13 (1st Cir.1992) ("The federal sentencing court will normally accept as valid a properly evidenced past conviction. Unless it reveals unconstitutionality on its face, a certified copy of a court record of conviction *or a presentence report's account of a past conviction* will normally prove the fact of a valid conviction") (emphasis added). In a subsequent opinion reported in 9 F.3d 988 (1992) the court withdrew its prior opinion for reasons which did not implicate its previous observation on the use of presentence reports; *United States v. Harris,* 964 F.2d 1234 (1st Cir.1992). In *United States v. Bregnard,* 951 F.2d 457 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992), a case virtually identical with this one, the court reached the same result. 18 U.S.C. § 3742(e) directs the court of appeals to "... accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." The conclusion of the district court, based as it was upon the information before it as outlined above, was not clearly erroneous and its application of the Guidelines to the facts shall be accepted and given the deference it is due.

■ The characterization of Brown's undisputed conviction of Attempted Robbery III as a misdemeanor or a felony aside, the reliance upon that conviction to enhance his sentence was otherwise correct. 18 U.S.C. § 924(e)(2)(B)(i) defines the term "violent felony" as meaning "any crime punishable by imprisonment for a term exceeding one year ... that has as an element the use, attempted use, or threatened use of physical force against the person of another." The generic meaning of "robbery" is reflected in the statutory definitions of that crime. For example, N.Y.Penal Law § 160.00 defines robbery as "forcible stealing" and that "a person forcibly steals property and commits robbery when, in the course of committing a larceny, he

uses or threatens the immediate use of physical force upon another person...." In 18 U.S.C. § 16 the term "crime of violence" is defined as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." It is readily apparent that the definition in § 924(e)(2)(B)(i) was derived from § 16. In 18 U.S.C. § 1951(b)(1) the term "robbery" is defined as meaning the "unlawful taking or obtaining of personal property from the person of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property...."

In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Court held that "the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. at 602, 110 S.Ct. at 2160. An examination of the fact of conviction of Attempted Robbery III and the statutory definition of that prior offense plainly reveals that it is a "violent felony" under § 924(e)(2)(B)(i) and was a correctly regarded predicate offense for the purpose of enhancing Brown's sentence. There is no "indication that Congress ever abandoned its general approach in designating predicate offenses of using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof and that are likely to be committed by career offenders, regardless of technical definitions and labels under state law." 495 U.S. at 590, 110 S.Ct. at 2154.

Because we affirm the sentence on the basis of U.S.S.G. § 4B1.4, we need not reach Brown's challenge to the alternative sentence justification on the basis of U.S.S.G. § 4B1.1.

LEVAL, Circuit Judge, concurring:

I concur in Judge Glasser's opinion and especially in his conclusion that exigent circumstances justified bypassing any applicable knock-and-announce requirement. The officers' information showed that the occupants of the home included professional drug dealers, probably armed, one of whom had a criminal record and had gone with an armed man to collect a drug debt. This gave adequate reason for the officers to fear for their safety if they forfeited the element of surprise by knocking, announcing their presence, and requesting admittance. The likelihood that such dealers could in seconds flush drug evidence down a toilet furnished additional justification.

I write separately, however, to note my disagreement with the passage where Judge Glasser, in dictum, discusses his view that, in the interest of uniformity in federal court rulings, a statute regulating the conduct of federal officers performing a search should be held retrospectively to cover state officers as well if evidence uncovered by their search is later offered in a federal criminal trial. In my opinion, this suggested rule is supported by neither reason nor authority, and, if adopted, would cause serious problems in the administration of justice.

Judge Glasser cites several cases which, to my mind, do not support his conclusion because they address different problems. *United States v. Pforzheimer,* 826 F.2d 200 (2d Cir.1987), was a federal narcotics prosecution in which the government offered evidence seized by Vermont state officers using procedures which the defendant claimed violated Vermont law, although it was clear the officers did not violate federal law. The defendants argued that the alleged violation of Vermont law should cause exclusion of the evidence from the federal prosecution. *Id.* at 202. This court rejected the argument, holding that only the requirements of federal law needed to be satisfied to make the evidence admissible, and that more stringent requirements of state law would not be applied to bar admission in a federal prosecution. *Id.* at 203–04. Although it is true that the opinion expresses this conclusion by using phrases such as "federal law should apply to this federal criminal prosecution," *id.* at 204, what was really meant was that *only* the applicable federal law requirements needed to be satisfied, not also the state law requirements. That holding in no way supports the proposition that a federal statute governing the conduct of federal officers, and not state officers, should be held to cover the state officers as

well should the fruits of their search be offered in federal court.

Similarly in *United States v. Smith*, 9 F.3d 1007 (2d Cir.1993), the defendant argued that violations of state law should result in suppression of the seized evidence offered in a federal prosecution, even though the seizure comported with federal requirements. We refused to consider whether state law had been violated. We ruled, citing *Pforzheimer*, that violations of state law by state officers would not result in exclusion of evidence from a federal trial. *Id.* at 1014.

Closer to the mark is *United States v. Turner*, 558 F.2d 46 (2d Cir.1977), which applied Fed.R.Crim.P. 41 to state officers participating in a drug investigation. In this case, however, it was by reason of the participation of federal officers in the search—not by reason of the subsequent offer of the evidence in federal court—that the federal rule was deemed applicable. 558 F.2d at 49; *see also United States v. Burke*, 517 F.2d 377 (2d Cir.1977).

Thus, the cases cited in Judge Glasser's opinion do not indicate that a federal statute governing the execution of a search by federal officers becomes applicable to state officers if the evidence they seize is later offered in a federal prosecution.

I recognize that the Supreme Court is presently considering whether the knock-and-announce rule dictated by § 3109 is also mandated by the Fourth Amendment's reasonableness requirement. *Wilson v. State*, 317 Ark. 548, 878 S.W.2d 755, 758 (rejecting claim that § 3109 is required by the Fourth Amendment), *cert. granted*, —— U.S. ——, 115 S.Ct. 571, 130 L.Ed.2d 488 (1994); *see Ayeni v. Mottola*, 35 F.3d 680, 687 n. 9 (2d Cir.1994) (Section 3109 coincides with the requirements of the Fourth Amendment); *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir.1991) (Fourth Amendment requires officers to provide notice of identity and imminent entry); *but see United States v. Sagaribay*, 982 F.2d 906, 909–10 (5th Cir.) (Fourth Amendment does not incorporate § 3109), *cert. denied*, —— U.S. ——, 114 S.Ct. 160, 126 L.Ed.2d 120 (1993). If the Supreme Court decides that § 3109 is constitutionally required, then it will, of course, apply regardless of whether state or federal officers conduct the search, and regardless whether the evidence is ultimately offered in state or federal court.

Nor do I dispute, even in the absence of a constitutional mandate, that there are factors present in this case which make it reasonable to apply the dictates of § 3109. Here we have: (i) an investigation conducted in part by federal officers; (ii) a warrant issued on the basis of criminal acts covered by the federal criminal law; (iii) extensive participation in the search by federal officers (five federal officers were present); and (iv) the evidence presented in federal court. This combination of factors provides ample reason for finding § 3109 applicable.

Judge Glasser's suggested rule, however, relies solely on the eventual offer of seized evidence in federal court to make § 3109 retroactively applicable to a state search. There are good reasons why § 3109 should not be interpreted in the manner Judge Glasser suggests. By his reasoning, even if the investigation and search had been 100% state operations, seeking evidence of a state crime, and a state prosecution had first been successfully conducted on the basis of the seized evidence, the eventual offer in a subsequent federal trial of a piece of evidence gathered in the search would retroactively make § 3109 applicable and require suppression.

Were we to adopt such an interpretation of federal laws, it would cause confusion, surprise and illogical results, unjustifiably preventing successful prosecution of criminals. State officers presumably take pains to conform their conduct to the constitutional and state law rules that govern them. When they conduct a search under a state warrant covering a state offense, they have no way of guessing that the search may reveal evidence of unsuspected federal crimes. If it does, the later prosecution of those crimes in federal court will retrospectively bring to bear an unfamiliar set of statutes and rules apparently covering different officers. The fruits of the search will be suppressed from the federal prosecution although the state officers at the time the search was conducted had no reason to believe they were doing anything

wrong. I cannot agree that this would be a desirable (or intended) interpretation of our federal statutes and rules, even if it led to greater uniformity of rulings in federal court. By allowing the guilty to go free without deterring police misconduct, it would bring about all the harms of a suppression rule without any of the benefits.

KEARSE, Circuit Judge, dissenting:

I respectfully dissent. In my view, the denial of defendant's motion to suppress was error because the district court's conclusions that the law enforcement officers' break-in either was in compliance with the so-called "knock and announce" statute or was a violation justified by exigent circumstances are contradicted by the court's findings of fact.

The "knock and announce" statute provides that a person authorized to execute a federal search warrant may break into the targeted dwelling "if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109 (1988). The language of this section indicates that, absent the need for "liberat[ion]" of one executing the warrant, the break-in is to be preceded by notice and a refusal of admittance; thus, absent compelling circumstances, there must be some pause to allow the occupants an opportunity to admit the officers without having the door broken in. See, e.g., United States v. Mendonsa, 989 F.2d 366, 370 (9th Cir.1993) ("absent exigency, there must be explicit refusal or lapse of a significant amount of time before officers may forcibly enter the premises"); United States v. Marts, 986 F.2d 1216, 1217–18 (8th Cir.1993) (lapse of less than five seconds held not sufficient to infer refusal of admittance necessary to comply with § 3109); United States v. Nabors, 901 F.2d 1351, 1355 (6th Cir.) ("[c]ases in which officers make a forced entry seconds after announcing their authority and purpose" must be "carefully scrutinized ... to determine whether there is compliance with § 3109"), cert. denied, 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). Section 3109 reflects " 'the reverence of the law for the individual's right of privacy in his house,' " a reverence that is " 'deeply rooted in our heritage and should not be given grudging application.' " Sabbath v. United States, 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968) (quoting Miller v. United States, 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958)).

Evidence seized following a break-in that failed to comply with § 3109 need not be suppressed if the noncompliance was excused by exigent circumstances. See, e.g., Sabbath v. United States, 391 U.S. at 591 & n. 8, 88 S.Ct. at 1759 & n. 8. However, exigent circumstances may excuse noncompliance with the knock-and-announce requirement only if the officers believed that there was an emergency situation, and their belief was objectively reasonable. See, e.g., United States v. Spinelli, 848 F.2d 26, 29 (2d Cir. 1988); United States v. Mendonsa, 989 F.2d at 370 ("specific inferences of exigency" are required); see generally United States v. Lucht 18 F.3d 541, 548–51 (8th Cir.1994).

In the present case, the district court concluded that because the drugs for which the officers were to search were capable of destruction, and because the officers knew that one of the anticipated occupants, Timothy Ellison, had a record for arrests involving violent crimes and had recently sought to collect a drug debt using a gun, the "totality of the circumstances" created "an emergency situation," or "sufficient exigent circumstances," justifying the officers in breaking into the premises simultaneously with their knock at the door. (Hearing Transcript, November 25, 1992 ("Tr."), at 149.) The court correctly noted that "the mere fact of execution of a warrant concerning the search for drugs is not sufficient to justify any sort of a departure from the knock and announce statute." (Tr. 145–46.) It nonetheless concluded that there was "a compliance with the knock and announce rule, which was so compressed in time that probably the people couldn't truly respond" (Tr. 149), and that the "simultaneous[ ] break-in ... [wa]s justified by the subjective knowledge that the officers had and their objective belief that there was a potential danger to them and a risk that the evidence would be destroyed" (Tr. 150). The court's exigent-circumstances and objective-

reasonableness conclusions, however, did not comport with its findings of fact.

The district court made the following factual findings with respect to this break-in, which occurred at 6 a.m.:

—"the break-in was virtually simultaneous with the announcement" (Tr. 149);

—because of that simultaneity, "the people couldn't truly respond, certainly to the announcement" (*id.*);

—indeed, "it may well have been that the knock did not wake anybody in the apartment" (*id.*);

—there was "no evidence in this case that the officers had any reason to believe that the persons within knew of their authority or purpose" (Tr. 147);

—"I do not believe that [the officers] could see inside the apartment or that the apartment was lighted" (*id.*);

—"I specifically do not find that the officers could see into the apartment or that they had any facts when they were about to enter the apartment that would suggest that the persons within were engaged in any activity to destroy evidence" (Tr. 145);

—"there isn't any evidence to suggest that the persons within were in any sort of peril" (Tr. 147); and

—"there is no evidence that suggests that at the time when the officers were outside of the apartment, that there was any activity going on inside of it that justified a belief that there was an escape or the destruction of evidence" (Tr. 148).

To the extent that the court ruled that the officers had complied with § 3109, its conclusion is contradicted by its findings, *inter alia*, that the break-in was simultaneous with the knocking, rather than "after" notice and refusal of entry, and that the break-in was not needed to "liberate" anyone.

To the extent that the court ruled that exigent circumstances justified noncompliance with § 3109, its conclusion is contradicted by its findings that the officers (a) could not see into the apartment, (b) could not see any lights, (c) had no reason to believe that the persons within knew of their authority or purpose, (d) had no reason to believe that the persons within were attempting to escape, and (e) had no reason to believe that the persons within were engaged in any activity to destroy evidence.

In the face of its explicit findings, the court's ruling adopts a principle that when officers executing a search warrant for narcotics expect one of the persons inside the targeted dwelling to be one who likely possesses a gun and has a record of arrests involving violent crimes, they are entitled to break in simultaneously with the announcement of their presence and authority. Though I do not suggest that compliance with § 3109 required the officers to do more than pause briefly to see whether the occupants would promptly admit them, I do not agree that the section authorized simultaneous knocking and breaking in; and I do not agree that the circumstances found here warranted disregard of the requirement that the officers pause between their announcement and their breaking in.

Accordingly, I conclude that the suppression motion should have been granted and that defendant should have a new trial.