Jasper **DOCKERY**, Plaintiff,

v.

Nathan **TUCKER**, et al., Defendants.

No. 97–CV–3584 (ARR).

United States District Court,
E.D. New York.

Sept. 24, 1998.

Jasper Dockery, Lorton, VA, pro se.

Gail Matthews, United States Attorney's Office, Eastern District of New York, Brooklyn, NY, for Nathan Tucker.

Thomas L. Koger, Office of the Corporation Counsel, D.C., Washington, DC, for Pam Reed, Phineas A. Young, defendants.

## OPINION AND ORDER

ROSS, District Judge.

### A. Factual Background and Procedural History

This action arises out of attempts on the part of District of Columbia police officers, an FBI agent, and an Assistant United States Attorney to effectuate the arrest of plaintiff Jasper Dockery and the return of plaintiff to the District of Columbia to face criminal charges. According to allegations in the plaintiff's original complaint, on February 6, 1996, FBI agent Nathan Tucker and D.C. detectives Pam Reed and Phineas Young "invaded plaintiff's family's apartment building" at 2127 Pitkin Avenue, Brooklyn, NY, wielding high-powered guns. Orig. Complaint, ¶ IV(1). According to the complaint, the agent and officers, accompanied by dogs, did so without announcing their presence, demanding admission, or presenting a warrant. *Id* at ¶ IV(2–3). In the process, according to plaintiff, the agent and officers cut off

padlocks on the door of the downstairs grocery store, pushed up shutters, broke down the building's main door with a sledgehammer, shot a dog with a tranquilizer gun, and broke into the grocery store, the plaintiff's apartment, and the apartments of three neighboring tenants. *Id.* at ¶ IV(1–2). In addition, plaintiff alleged that the entire arrest was false, "pretextual," and that the agent and officers acted without a warrant or indictment, on the basis of a charge—parental kidnaping—for which he was never arraigned or prosecuted. *Id.* at ¶ IV(2, 4). Finally, plaintiff alleges that Agent Tucker provided false information to the presiding magistrate judge at his arraignment in the Eastern District of New York and furnished plaintiff's defense counsel with an "invalid indictment;" this "invalid indictment" caused the plaintiff to waive his objection to his removal to the District of Columbia for trial. *Id.* at ¶ IV(13).

Plaintiff's original complaint also raises a number of claims against Assistant United States Attorney (AUSA) Kenneth Kohl. The complaint accuses AUSA Kohl of "falsely and maliciously prosecuting (sic) for the murder of one James Ivy.…" *Id.* at ¶ IV(7). Plaintiff's complaint also charges AUSA Kohl with engaging "in a (sic) reckless, willful, and malicious policies and practices that deprive plaintiff of his liberty," *id.* at ¶ IV(10), and with maliciously manufacturing evidence. *Id.* at ¶ IV(7). In addition, plaintiff alleges that "the outrageous conduct of the government prosecutor Mr. Kenneth Kohl and others … is a clear violation of the plaintiff's Fourth Amendment rights.…" *Id.* at ¶ IV(5). Plaintiff gives no more particularized facts to support these allegations against AUSA Kohl.

Finally, plaintiff's original complaint raises claims against the Legal Aid Society of New York. According to the complaint, in representing plaintiff at his arraignment in the Eastern District of New York, an unknown lawyer at the Legal Aid Society provided the plaintiff with ineffective assistance, because the lawyer advised plaintiff to waive objection to his removal to the District of Columbia despite the alleged invalidity of the underlying indictment. *Id.* at ¶ IV(14). According to the complaint, the Legal Aid Society thus violated his Sixth Amendment right to counsel. *Id.*

As a result of defendants' actions, plaintiff alleges in his original complaint that he sustained property damage, income loss, and loss of liberty, and the plaintiff's family sustained psychological damage. *Id.* at ¶ IV(9). In particular, plaintiff demands $5,000,000 plus $800 per day of his confinement. *Id.* at ¶ IV(12).

After defendants Reed and Young filed answers and defendants Tucker and Kohl filed motions to dismiss plaintiff's original complaint or, in the alternative, for summary judgment, plaintiff moved for leave to amend his complaint. The amended complaint submitted by plaintiff contains allegations involving a completely different incident, which took place in October or November of 1995. In effect, the amended complaint represents an entirely new complaint. While plaintiff never makes explicit his intentions regarding the amended complaint's relation to the original complaint, the court will assume that plaintiff intended the amended complaint to supplement (rather than replace) the original with new claims about a different incident.

Plaintiff's amended complaint contains no allegations against original defendants Kohl and the Legal Aid Society, but includes new allegations against defendants Tucker, Reed, and Young, as well as allegations against potentially new defendants—F.B.I. agents, D.C. detectives, and New York City police officers whose names were unknown at the time of the amended complaint. *See* Amend. Complaint at ¶ 6–8.

According to the amended complaint, at some point in October or November of 1995 Agent Tucker and unnamed agents and detectives engaged in an illegal search of the building located at 2127 Pitkin Ave-

nue. *See id.* at ¶ 9–17. In particular, the plaintiff alleges that Tucker and unnamed agents and detectives: (1) searched the grocery store, plaintiff's apartment, and the other apartments in the building, removing and not returning assorted items therefrom, *see id.* at ¶ 9–16, (2) broke down doors, cut padlocks, and severely damaged walls, ceilings, electrical wiring, and plumbing throughout the building, *see id.*, (3) "set a police attact (sic) dog loose" in plaintiff's apartment, terrorizing plaintiff's family, *see id.* at ¶ 11, (4) forced plaintiff's family out of their apartment during a four-hour search, *see id.* at ¶ 13, (5) and "tear-gassed the entire property." *See id.* at ¶ 17.

As a result of these alleged actions, plaintiff contends that Agent Tucker and the unnamed agents and detectives perpetrated an illegal search, in violation of the Fourth Amendment, and deprived plaintiff of his personal property without due process of law, in violation of the Fifth and Fourteenth Amendments. *See id.* at ¶ 18–19. Plaintiff requested a declaratory judgment, as well as $73,490 in property damages, $80,000 in damages from each defendant for his daughter's emotional distress, and $280,000 in punitive damages from each defendant. Defendants Tucker and Kohl filed papers opposing plaintiff's motion to amend the complaint.

## B. Pending Motions

There are four motions pending before the court: (1) defendant Kenneth Kohl's motion to dismiss the original complaint, or, in the alternative, for summary judg-

ment on the original complaint, (2) defendant Legal Aid Society's motion to dismiss the original complaint, (3) defendant Nathan Tucker's motion to dismiss the original complaint, or, in the alternative, for summary judgment on the original complaint, and (4) the plaintiff's motion for leave to amend the complaint. The court will address each motion in turn.

### 1. Motion to Dismiss or for Summary Judgment—Defendant Kenneth Kohl

In his original complaint, the plaintiff alleges that AUSA Kohl (1) engaged in "outrageous conduct" that violated plaintiff's Fourth Amendment rights, (2) maliciously and falsely prosecuted plaintiff, (3) engaged in "reckless, willful, and malicious policies and practices that deprive plaintiff of his liberty," and (4) maliciously and willfully manufactured false evidence. *See* Orig. Complaint. The plaintiff appears to be bringing these claims against Kohl under the constitutional cause of action recognized by the Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[1] In response, defendant Kohl argues that, even if the defendant's allegations are true, as a prosecutor he is absolutely immune from liability. In addition, Kohl contends that the plaintiff's complaint does not state a claim upon which relief can be granted.[2] As a result, Kohl moves to dismiss the original complaint, or, in the alternative, for summary judgment.

---

1. The plaintiff cannot maintain an action against AUSA Kohl under the Federal Tort Claims Act, which only creates remedies against the United States, not its agents or employees. 28 U.S.C. § 2679; *see also Rivera v. United States,* 928 F.2d 592, 609 (2d Cir. 1991). Nor can the plaintiff sue Kohl under 42 U.S.C. § 1983, which applies only to persons acting under color of *state* law. *Daly–Murphy v. Winston,* 837 F.2d 348, 355 (9th Cir.1987). AUSA Kohl, FBI agent Tucker, and the D.C. police all operate under color of federal law.

2. Defendants Kohl and Tucker also argue that the case should be dismissed for lack of personal jurisdiction because the individual defendants were not personally served. *See* FedR.Civ.P. 4(e). The merits of this argument are questionable, given that the plaintiff is proceeding *pro se* and *in forma pauperis* and thus is entitled to rely on service by the U.S. Marshal. *See Romandette v. Weetabix Co., Inc.,* 807 F.2d 309, 311 (2d Cir.1986). However, since the court disposes of the case on other grounds, the court need not address this issue.

In deciding a defendant's motion to dismiss, a court must accept all material facts alleged in plaintiff's complaint as true, and draw all reasonable inferences in favor of the plaintiff. Fed.R.Civ.P. 12(b)(6); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). Dismissal is only warranted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Because plaintiff is proceeding *pro se* and civil rights violations are alleged, this caution applies with even greater force. *Hernandez,* 18 F.3d at 136.

■ In *Imbler v. Pachtman,* the Supreme Court ruled that prosecutors were absolutely immune from suits under § 1983, provided that the prosecutors' actions under litigation were "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Court subsequently extended the same absolute immunity to federal prosecutors confronted with actions brought directly under the U.S. Constitution. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) ("[W]e deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."). However, the Court was careful to clarify that absolute immunity depends on "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). As a result, when prosecutors are engaged in administrative or investigative activities, they generally receive only qualified immunity. However, prosecutors are protected by absolute immunity for all actions "whether in or out of the courtroom, 'which occur in the course of the prosecutor's role as an advocate for the state.'" *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)).

As discussed above, plaintiff appears to have four claims against Kohl: (1) violation of plaintiff's Fourth Amendment rights, (2) malicious prosecution, (3) deprivation of liberty, and (4) manufacturing of false evidence. This court will address each of plaintiff's claims individually to determine whether defendant Kohl is absolutely immune from liability.

■ As with much of plaintiff's original complaint, plaintiff's Fourth Amendment claim against Kohl is general and conclusory in nature. Construing plaintiff's *pro se* complaint liberally, this court assumes plaintiff's claim arises from his allegation that his arrest was effectuated without a warrant (or with an invalid warrant) and that no complaint was filed alleging probable cause subsequent to the arrest. Unfortunately for plaintiff, even if these allegations are true, the defendant is absolutely immune from liability for these actions.

Because a primary purpose of absolute immunity is to protect "the prosecutor when serving as an advocate in judicial proceedings," *Kalina v. Fletcher,* 522 U.S. 118, 118 S.Ct. 502, 507, 139 L.Ed.2d 471 (1997), the Supreme Court has extended absolute immunity to cover "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial...." *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). In particular, the Court has held that a prosecutor's appearance in court in support of an application for a search warrant was protected by absolute immunity. *Burns v. Reed,* 500 U.S. 478, 492, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The Second Circuit has extended absolute immunity to cover a prosecutor's preparation of an indictment and pursuit of an arrest warrant. *See Barr v. Abrams,* 810 F.2d 358, 361 (2d Cir.1987); *Taylor v. Kavanagh,* 640 F.2d 450, 452 (2d Cir.1981).

As a result, actions taken by AUSA Kohl in preparing an indictment of defendant and pursuing an arrest warrant are protected by absolute liability. Similarly, Kohl's decision not to file a complaint subsequent to plaintiff's arrest represents a legal determination rendered pursuant to Kohl's role as the state's advocate; as such, the decision triggers absolute immunity. Finally, if, as the plaintiff appears to allege, the arrest was effectuated without a warrant, the plaintiff may have a cause of action against the arresting officers, but not against AUSA Kohl.[3]

■ Plaintiff's second allegation—that Kohl falsely and maliciously prosecuted the plaintiff—is similarly subject to absolute immunity. Case law from the Second Circuit clearly establishes that the decision to prosecute is within the judicial phase of the criminal process and is thus absolutely immune. *See Pinaud,* 52 F.3d at 1149; *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993); *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). Plaintiff's malicious prosecution allegation is therefore barred by defendant's absolute immunity.

Defendant Kohl is also absolutely immune from plaintiff's third claim—that Kohl maliciously deprived plaintiff of his liberty. Because plaintiff's complaint does not provide a factual basis for his allegation of deprivation of liberty, it is not entirely clear what particular actions on the part of AUSA Kohl the plaintiff is challenging. But, as discussed above, to the extent that the plaintiff is attacking Kohl's actions in securing an arrest warrant and an indictment, Kohl is protected by absolute immunity.

■ As for plaintiff's fourth and final claim against Kohl—that he manufactured false evidence—the plaintiff's complaint is insufficiently specific for the court to determine what level of immunity to accord Kohl. Indeed, the allegation is insufficiently specific to survive a motion to dismiss. *See San Filippo v. U.S. Trust Co. of New York, Inc.* 737 F.2d 246, 256 (2d Cir.1984) (unsubstantiated, conclusory allegations of conspiracy are insufficient to state a valid claim for relief under § 1983). Even a *pro se* plaintiff must offer more factual basis for a claim than a merely conclusory statement that the defendant "has willfully and maliciously manufacture (sic) false evidence." Orig. Complaint at ¶ IV(17).

Thus, plaintiff's claims against AUSA Kohl are dismissed. In particular, because Kohl is absolutely immune from plaintiff's claims of Fourth Amendment violations, malicious prosecution, and deprivation of liberty, those claims are dismissed with prejudice. As for the plaintiff's unsubstantiated claim that Kohl manufactured evidence, the court dismisses this claim without prejudice. If the plaintiff can offer concrete and particularized allegations of evidence fabrication that do not trigger absolute liability, the plaintiff has leave to replead this claim. Because the claims against AUSA Kohl are dismissed, the court need not reach his motion for summary judgment.

### 2. *Motion to Dismiss—Legal Aid Society*

■ While plaintiff's original complaint clearly alleges a violation of his Sixth Amendment right to counsel, the basis of plaintiff's cause of action against the Legal Aid Society is unclear. As defendant points out, plaintiff cannot make out a cause of action under 42 U.S.C. § 1983 because the Legal Aid Society does not

---

**3.** It is noteworthy that the plaintiff makes no allegations that AUSA Kohl was present at, directed, or was in any way involved in, the execution of the arrest. As a result, the plaintiff could not successfully maintain that Kohl's actions "cast him in the role of an administrator or investigative officer rather than that of the advocate." *Imbler,* 424 U.S. at 430–31, 96 S.Ct. 984; *see, e.g., Day v. Morgenthau,* 909 F.2d 75, 77–78 (2d Cir.1990) (holding prosecutors who *participate* in execution of arrest warrants to be protected only by qualified immunity).

operate "under color of state law."[4] *See Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). As this court has previously warned, "[i]neffective assistance of counsel is a matter to be raised on appeal, or by collateral means, attacking the conviction in state court.... [Section 1983] was not enacted to appease disaffected clients by fining their attorneys." *Mitchell v. Cohen*, 1990 WL 100254, at *1 (E.D.N.Y.1990).

■ Moreover, plaintiff has failed to state a cause of action for legal malpractice under New York State law.[5] In New York, it is well settled that a plaintiff must allege his innocence of the underlying offense, or at least make a colorable claim of innocence, in order to state a cause of action for legal malpractice in a criminal case. *See Carmel v. Lunney*, 70 N.Y.2d 169, 173, 518 N.Y.S.2d 605, 511 N.E.2d 1126 (1987). According to the New York Court of Appeals, so long as the plaintiff's underlying conviction "has not been successfully challenged, he can neither assert, nor establish his innocence" and therefore "no cause of action will lie." *Id.* To date, plaintiff Dockery has not successfully challenged his underlying murder conviction;[6] therefore, under New York law, he can not state a cause of action for legal malpractice against the Legal Aid Society. Plaintiff's claim against the Legal Aid Society cannot survive defendant's motion to dismiss.

**3.** *Motion to Dismiss or for Summary Judgment—Defendant Nathan Tucker*

Essentially, plaintiff's original complaint against Agent Tucker boils down to four claims: (1) false arrest, (2) false imprisonment, (3) illegal search and seizure in violation of the Fourth Amendment, and (4)

provision of a false affidavit at plaintiff's arraignment.[7] In his motion to dismiss the original complaint, defendant Tucker argues that plaintiff has not stated any claim upon which relief can be granted, that he is protected from plaintiff's claims by qualified immunity, and that plaintiff is barred from suit by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and the doctrine of collateral estoppel. Tucker also moves, in the alternative, for summary judgment on the original complaint on the same grounds. This court will first address defendant Tucker's motion to dismiss in its entirety, then turn to his motion for summary judgment.

a. Motion to Dismiss

i. False Arrest and Imprisonment

The defendant's contention that plaintiff has not stated a claim disposes of plaintiff's first two claims. The claims of false arrest and false imprisonment are premised on a lack of probable cause for the arrest. *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir.1986). At common law, because conviction is considered conclusive evidence of probable cause, actions for false arrest and false imprisonment are barred if the plaintiff remains convicted of the offense for which he was arrested. *See id.* The common law bar of conviction applies equally to actions alleging false arrest or false imprisonment brought under § 1983. *See Heck*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383; *Cameron*, 806 F.2d at 388–89. The Second Circuit recently applied the same rule to *Bivens* cases, barring a convicted plaintiff from bringing a false arrest or imprisonment suit against federal agents unless and until

---

**4.** Nor can plaintiff bring a *Bivens* action against the Legal Aid Society, as it is not a federal entity.

**5.** Since the alleged legal malpractice took place in the Eastern District of New York, the malpractice claim would be governed by New York State law.

**6.** Plaintiff Dockery's appeal has apparently not yet been heard.

**7.** In his amended complaint, plaintiff levels an additional charge of illegal search in violation of the Fourth Amendment and an allegation that defendant Tucker deprived plaintiff of his property without due process of law in violation of the Fifth Amendment.

his conviction was overturned. *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir.1995).

■ In the case at hand, defendant argues that plaintiff has not and can not sufficiently plead false arrest and imprisonment claims because of his standing conviction of the crimes for which he was arrested. As in *Tavarez*, at the time of this action's commencement, plaintiff Dockery was (and still is) "incarcerated ... based on a prior federal conviction which had not been invalidated on direct appeal, in a habeas corpus proceeding, or otherwise. The same facts underlie both the prior conviction and the instant Bivens action." *Id.* at 109. Therefore, as in *Tavarez*, *id.* at 110, this court will dismiss the plaintiff's false arrest and false imprisonment claims against Tucker without prejudice. If the plaintiff successfully challenges his conviction through direct appeal or *habeas corpus* petition, the plaintiff will have an opportunity to replead these claims.[8]

■ In his original complaint, plaintiff appears to assert the same false arrest and imprisonment claims against defendants Reed and Young that he asserts against defendant Tucker. Although defendants Reed and Young did not bring a motion to dismiss, this court has the authority to dismiss a complaint *sua sponte* for failure to state a claim upon which relief may be granted, so long as plaintiff was given notice and an opportunity to be heard. *See Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir.1994). In this case, plaintiff was both served with and responded to defendant Tucker's motion to dismiss, which contained this ground for dismissal. Plaintiff was thus given notice and an opportunity to be heard regarding the conviction bar to his false arrest and imprisonment claims. As a result, for the

reasons stated above pursuant to defendant Tucker's motion, this court also dismisses plaintiff's claims of false imprisonment and arrest against defendants Reed and Young without prejudice, subject to potential repleading if plaintiff overturns his conviction.

**ii. Fourth Amendment claim**

Defendant Tucker essentially makes three arguments as to why plaintiff's Fourth Amendment claim should be dismissed. Tucker argues that the plaintiff has failed to state a claim upon which relief may be granted, that he is protected by qualified immunity, and that the plaintiff's claim is barred by *Heck v. Humphrey* and/or the doctrine of collateral estoppel. This court will address each argument in turn.

As stated above, in assessing whether to dismiss a claim for failure to state a claim, the court must accept all material facts alleged in plaintiff's complaint as true, and draw all reasonable inferences in favor of the plaintiff. Fed.R.Civ.P. 12(b)(6); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994). Dismissal is only warranted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991). Because plaintiff is proceeding *pro se* and civil rights violations are alleged, this caution applies with even greater force. *Hernandez*, 18 F.3d at 136.

■ In his original complaint, plaintiff alleged that defendant Tucker invaded plaintiff's home and damaged plaintiff's property without a warrant and without announcing his presence. Plaintiff's allegations state a *prima facie* case that he was subjected to an unreasonable search

---

8. In the event that plaintiff overturns his conviction and reinstitutes his false arrest and imprisonment claims, he need not worry about expiration of the statute of limitations. As this court has held, in false arrest and false imprisonment cases where the person arrest-

ed is convicted of the criminal charge and the conviction is later overturned, "the statute of limitations does not begin running until the date on which the conviction is overturned." *McIlwain v. Perez*, 1997 WL 38085, at *2 (E.D.N.Y.1997).

and seizure in violation of the Fourth Amendment. *See Bivens,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (holding allegations that federal agents made warrantless entry of petitioner's apartment without probable cause, searched the apartment, and arrested him on narcotics charges to state claim sufficient to withstand motion to dismiss).

Accepting plaintiff's allegations that the search was unannounced and warrantless as true, as the court must for the purposes of the motion to dismiss, defendant Tucker still argues that the complaint does not state a cause of action because the search was constitutionally valid as a matter of law. In support of this argument, Tucker correctly points out that a warrantless search may be justified on the grounds of prior exigent circumstances. *See United States v. MacDonald,* 916 F.2d 766, 771 (2d Cir.1990). Similarly, Tucker correctly asserts that arresting officers need not announce their presence prior to entering a suspect's home when exigent circumstances exist or when the officer reasonably believes the suspect knows of the officer's presence and intentions. *See Miller v. United States,* 357 U.S. 301, 310, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *United States v. Spinelli,* 848 F.2d 26, 29 (2d Cir.1988). However, whether exigent circumstances justify an unannounced, warrantless search is a highly fact-specific determination. Indeed, in *MacDonald,* the Second Circuit directed that the "test for determining whether a warrantless entry is justified by exigent circumstances ... turns on the district court's examination of the totality of circumstances confronting law enforcement agents in the particular case." *Id.* at 769. The same, fact-specific *MacDonald* test is employed in determining whether officers were justified in dispensing with the "knock and announce" requirement. *United States v. Fields,* 113 F.3d 313, 322 (2d Cir.1997). A motion to dismiss is an inappropriate procedural vehicle to determine such questions.

Defendant Tucker also argues that the complaint fails to sufficiently allege that plaintiff had a reasonable expectation of privacy in the place searched. *See United States v. Perea,* 986 F.2d 633, 639 (2d Cir.1993). Tucker does not appear to dispute plaintiff's expectation of privacy in his own apartment. As for the basement, grocery store, and other apartments at 2127 Pitkin Avenue, the original complaint's allusions to "plaintiff's family apartment building," Orig. Complaint ¶ at IV(1), "our house," Orig. Complaint at ¶ IV(5), and plaintiff's "business, which is a grocery store," Orig. Complaint at ¶ IV(9), and the amended complaint's contention that plaintiff's minor child owned "the titled property damaged at 21 Pitkin Avenue, Brooklyn, New York" are sufficient allegations of an expectation of privacy to withstand a motion to dismiss.

In support of his second argument, defendant Tucker points out that qualified immunity affords a defendant official broader protection than does his defense that plaintiff failed to state a constitutional violation. *See Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Indeed, defendant Tucker is entitled to immunity if plaintiff's rights were not clearly established, *see Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), or if a reasonable person in Agent Tucker's position would not have appreciated that his conduct would violate those rights. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991).

Accepting the plaintiff's allegations as true, as the court must in deciding defendant's motion to dismiss, this court does not agree with defendant Tucker that his alleged actions did not violate clearly established rights. According to the complaint, Agent Tucker performed an unannounced, warrantless search and seizure of plaintiff in plaintiff's own home. It is well settled and widely known that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry

into a suspect's home in order to make a routine felony arrest. *See Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Though the complaint appears to acknowledge that Tucker was carrying "a false indictment," Orig. Complaint at IV(2), even if Tucker thought the indictment was valid, that belief, without more, would not justify making an unannounced, warrantless seizure of plaintiff in plaintiff's apartment.

Agent Tucker's argument that a reasonable person in his position would not have viewed the actions alleged in plaintiff's complaint as violating the Fourth Amendment is equally unconvincing. If, as plaintiff alleges, agent Tucker performed an unannounced, warrantless search and seizure of plaintiff in plaintiff's apartment, the question of qualified immunity will turn on whether a reasonable person in agent Tucker's position would have deemed there to be exigent circumstances. As agent Tucker acknowledged in his brief, such questions depend on an "assessment of the officer's actions in light of the facts and circumstances confronting him at the time...." *Simms v. Village of Albion*, 115 F.3d 1098, 1108 (2d Cir.1997) (quoting *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985)). In analyzing the defendant's motion to dismiss, the court is limited to the facts in the complaint; the complaint does not appear to contain any facts that support a finding of exigent circumstances warranting dismissal.

■ Finally, Agent Tucker argues that *Heck v. Humphrey* and collateral estoppel bar the court from considering plaintiff's Fourth Amendment claims. Defendant Tucker relies upon the following facts in support of his *Heck* and collateral estoppel arguments: at plaintiff's criminal trial, plaintiff moved to dismiss the prosecution for lack of jurisdiction, in part on the basis of the alleged illegal seizure that forms the heart of the current action; the trial judge

stated in open court that the warrant was valid; and the judge subsequently summarily denied the plaintiff's motion to dismiss. *See* Kohl Affid. at ¶ 6 and Exh. K–L.

In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (emphasis added). Defendant Tucker argues that, under *Heck*, the plaintiff may not allege a warrantless search and a Fourth Amendment violation in this *Bivens* action, because a judgment in favor of plaintiff would imply the invalidity of his conviction.

■ However, the bar on § 1983 and *Bivens* actions by convicted prisoners does not apply to all suits alleging constitutional violations at trial, but only to those where reversal of the criminal court would *necessarily* undermine the conviction. *See id.; Jackson v. Suffolk County Homicide Bureau*, 135 F.3d 254, 256 (1998). Indeed, the *Heck* court singled out Fourth Amendment cases as examples of suits where a federal court's finding of a constitutional violation would not necessarily imply that the prior conviction was unlawful. 512 U.S. at 487 n. 7, 114 S.Ct. 2364 (stating that doctrines like independent source, inevitable discovery, and harmless error could still save the conviction). In this case, the trial court's apparent ruling that the search was made pursuant to a valid warrant and thus satisfied the Fourth Amendment was not necessary to plaintiff's conviction. As a result, it cannot be said at this time that *Heck* bars plaintiff from ·bringing a *Bivens* action alleging a Fourth Amendment violation.[9]

9. Some Second Circuit case law suggests that a court "adjudicating a civil claim that nei-

ther depends on nor necessarily results in invalidation of, but could have an impact on,

Finally, agent Tucker argues that the doctrine of collateral estoppel bars the plaintiff from bringing this action. The doctrine of collateral estoppel "may bar relitigation in a subsequent civil rights action in federal court of an issue that was determined in a state court criminal proceeding." *Owens v. Treder*, 873 F.2d 604, 606 (2d Cir.1989); *see Allen v. McCurry*, 449 U.S. 90, 103–05, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). However, in order to trigger collateral estoppel, the precise issue must have been "actually and necessarily determined." *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

Notwithstanding the oral statements of the trial judge in denying Dockery's motion to dismiss the indictment for lack of jurisdiction, there is no evidence that the issue of the validity of the warrant was necessary to that determination. The remedy in a criminal case for an illegal search and seizure in violation of the Fourth Amendment is limited to suppression of evidence seized as a result of the violation, not the dismissal of the indictment. *See United States v. Morrison*, 449 U.S. 361, 365–66, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). Thus, it was not necessary for the criminal court to resolve the search and seizure issue in order to deny plaintiff's motion to dismiss. As a result, the state criminal court has not ruled on the validity of the warrant and the legality of the search and seizure in question in a fashion that precludes relitigation of those issues in this case. Therefore, for the reasons stated above, defendant Tucker's motion to dismiss plaintiff's Fourth Amendment claim fails.

iii. Provision of False Affidavit at Arraignment

 Plaintiff's final claim is that Agent Tucker furnished "false information to the

federal court in Brooklyn, New York, on February 7, 1996 in his affidavit to assure the court to have the plaintiff send (sic) to the District of Columbia." Orig. Complaint at IV(13). In addition, the plaintiff charges that Agent Tucker furnished plaintiff's criminal defense counsel an "invalid indictment." *Id.*

In the affidavit in question, defendant Tucker avowed that (1) an arrest warrant was issued in the District of Columbia based upon an indictment charging plaintiff Dockery with first degree murder and related charges, (2) Dockery was arrested at his residence, 2127 Pitkin Avenue, on February 6, 1996, and (3) Dockery was brought to the FBI office and identified by two Washington D.C. police officers. Attached to the affidavit are copies of the arrest warrant and the indictment for the murder of Melvin Jones. Plaintiff does not appear to dispute parts two or three of Agent Tucker's affidavit, but rather focuses his claim of a false affidavit on part one: according to plaintiff, Tucker lied regarding the existence of the arrest warrant and indictment.

In his motion to dismiss, defendant Tucker argues that he is protected from this claim by qualified immunity. As discussed above, Tucker is entitled to qualified immunity if plaintiff's rights were not clearly established, *see Mitchell v. Forsyth*, 472 U.S. at 526, 105 S.Ct. 2806 (1985), or if a reasonable person in Agent Tucker's position would not have appreciated that his conduct would violate those rights. *Kaminsky v. Rosenblum*, 929 F.2d at 925.

Plaintiff's allegations that Agent Tucker lied about the existence and validity of an arrest warrant and an indictment sufficiently establish the violation of a clearly established right.[10] Moreover, accepting

---

the conviction" should stay the civil action pending resolution of the plaintiff's appeals of his criminal conviction. *See Jackson*, 135 F.3d at 257. However, because this court awards the defendant summary judgment on the grounds of qualified immunity, there is no

need to determine whether adjudicating this claim would have any impact at all on plaintiff's conviction.

**10.** Accepting plaintiff's allegations as true, inducing a federal court to sanction the arrest

the facts alleged in plaintiff's original complaint, there is no indication that defendant Tucker acted as a reasonable person would have in his position. As a result, Agent Tucker's motion to dismiss this claim must fail.

### b. Motion for Summary Judgment

This court's rejection of defendant Tucker's motion to dismiss plaintiff's Fourth Amendment and false affidavit claims is not the final word on these matters. Defendant Tucker also moved that the court grant him summary judgment on these claims. For the reasons stated below, the court grants this motion.

As discussed above, defendant Tucker is entitled to qualified immunity if plaintiff's rights were not clearly established, *see Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), or if any reasonable person in Agent Tucker's position would not have appreciated that his conduct would violate those rights. *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991). Put another way, the relevant question in this case is "whether a reasonable officer *could* have believed [the] search to be lawful, in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (emphasis added).

As the Supreme Court has stated, one of the purposes of qualified immunity is to "permit the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Indeed, it is well settled that the defense of qualified immunity should be decided at the earliest possible stage in a litigation. *See*

*Castro v. U.S.,* 34 F.3d 106, 112 (2d Cir. 1994). On a motion for summary judgment on the ground of qualified immunity, defendant bears the burden of showing that there is no genuine issue of material fact. *Id.*

### i. Fourth Amendment claims

■ Plaintiff's Fourth Amendment claims are that Agent Tucker entered plaintiff's home without a valid warrant and without announcing his presence, and, upon entry, exercised unreasonable force in a manner destructive to plaintiff's property and alarming to plaintiff's family. Defendant Tucker moved for summary judgment on the basis of facts in the plaintiff's complaint and affidavits and exhibits submitted by defendants Tucker and Kohl.

In his affidavit in support of his motion for summary judgment, defendant Tucker alleged that, at the time of the arrest in question, plaintiff was the subject of four active, outstanding arrest warrants for two separate murder charges, obstruction of justice, and parental kidnaping. *See* Tucker Affid. at ¶¶ 3–8. Defendant Tucker submitted copies of all four arrest warrants to this court; all four warrants were issued by District of Columbia judges prior to February 6, 1996—the date of the arrest in question. *See* Tucker Affid.Exh. A, C, E & G. While the active nature of one of the warrants is open to debate,[11] the other three clearly remained active on February 6, 1996.

Plaintiff does not appear to dispute the existence of the these three arrest warrants, but rather attacks their validity. According to plaintiff, the two arrest warrants for first degree murder were invalid because each warrant bears the phrase "Valid only in the District of Columbia" on

---

and removal to another jurisdiction of a suspect through false allegations of an indictment and arrest warrant would clearly violate plaintiff's right to due process of law.

**11.** The first arrest warrant bears a large "X" on its face, accompanied by the word "VACATE" without any indication of when it was

vacated. In an affidavit to the court, defendant Kohl contends that the warrant was vacated after the February 6th arrest. *See* Kohl Affid. at ¶ 3. However, the court need not rely on this contention, because of the existence of three other active, outstanding warrants.

its face. Moreover, according to plaintiff, the third arrest warrant for parental kidnaping is invalid because the prosecution never filed a criminal complaint as to this charge.

In response to plaintiff's contention that the two arrest warrants for murder were invalid outside the District of Columbia, defendant Tucker points to D.C.Code § 23–563(a), which decrees that "[a] warrant or summons for an offense punishable by imprisonment for more than one year issued by the Superior Court of the District of Columbia may be served in any place within the jurisdiction of the United States." *See Rogers v. Dixon,* 1992 WL 182301, at *5 & n. 3 (D.D.C.1992) (holding that § 23–563(a) "gives warrants issued by the Superior Court of the District of Columbia nation-wide reach"). In this case, because the warrants in question were issued by the D.C. Superior Court, and first degree murder is an offense punishable by imprisonment of more than one year, not only did Agent Tucker act reasonably in relying on these warrants, but the warrants themselves were valid. As for plaintiff's contention that the parental kidnaping arrest warrant was invalid because no complaint was filed subsequent to his arrest, even if such an argument had any merit in some other context, it has no bearing on the question of whether Agent Tucker reasonably relied upon the warrant as valid at the time of the arrest.

Therefore, in assessing Agent Tucker's motion for summary judgment as to plaintiff's claim that the arrest was warrantless, the court is presented with the following undisputed facts: the D.C. Superior Court had issued four outstanding warrants for plaintiff, at least three of which were still in effect on the arrest date; defendant Tucker was aware of the outstanding arrest warrants when he effected the arrest; and defendant Tucker presented one of the arrest warrants to a magistrate judge at

plaintiff's arraignment in the Eastern District of New York. Moreover, after examining the warrants, this court is convinced that there is no question as to their validity. From these undisputed facts, it is clear that defendant Tucker has borne the burden of establishing that there is no genuine issue of material fact regarding the existence of a valid warrant and thus he is entitled to summary judgment.

Defendant's motion for summary judgment on plaintiff's second allegation—that defendants Tucker, Reed, and Young broke down the doors of his apartment and entered without first announcing their presence, identity, and purpose—presents a more difficult question. At the time of the arrest, it was well settled law that the Fourth Amendment incorporates the common law requirement that a police officer entering a dwelling knock and announce his identity and purpose before attempting forcible entry. *See Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). However, equally well settled was the proposition that a violation of this "knock and announce" rule does not constitute an automatic Fourth Amendment violation. *See id.* at 935–36, 115 S.Ct. 1914. Indeed, courts have repeatedly upheld officers dispensing with the "knock and announce" rule in cases involving "exigent circumstances," *see, e.g., id.; United States v. Brown,* 52 F.3d 415, 421 (2d Cir.1995), including the likelihood of increased danger to the arresting officer from announcing his presence. *See Wilson,* 514 U.S. at 936, 115 S.Ct. 1914; *United States v. Spinelli,* 848 F.2d 26, 29–30 (2d Cir.1988).

Plaintiff alleges that defendants Tucker, Reed, and Young broke down the doors to his building and apartment without demanding admission or stating their presence or purpose. While defendant Tucker disputes this allegation,[12] this court must draw all inferences in favor of the plaintiff

---

12. Defendant Tucker maintains that he knocked on the building door, announced his presence and purpose of executing the arrest warrant, and negotiated for twenty-five minutes with plaintiff's common law wife for her to open the door. *See* Tucker Affid. at ¶ 9.

in determining defendant's motion for summary judgment and consequently will treat plaintiff's allegations as true. As a result, the question at hand is whether, under the particular circumstances on February 6, 1996, any reasonable officer could have determined that exigent circumstances existed such that an unannounced search would not violate the Fourth Amendment. If so, defendant's motion for summary judgment must be granted. *See Anderson,* 483 U.S. at 641, 107 S.Ct. 3034.

In addressing this question, the court must determine what information was possessed by Agent Tucker prior to his alleged decision to execute the warrant without announcing his presence. *See id.* First, as discussed above, Agent Tucker was in possession of four warrants for the plaintiff's arrest—two for first degree murder, one for obstruction of justice, and one for parental kidnaping. Agent Tucker was aware that the obstruction of justice charge involved alleged threats by the plaintiff towards a grand jury witness in one of the murder cases—threats involving the murder of every member of the witness's family if witness testified against the plaintiff. *See* Tucker Affid at ¶ 3 & Exh. A. Agent Tucker was also in possession of FBI reports alleging that plaintiff had previously been arrested for numerous violent crimes, including Assault with a Dangerous Weapon, and repeatedly describing plaintiff as "armed and dangerous." *Id.* at ¶ 4 & Exh. B. Finally, directly prior to the unannounced entry at issue, Agent Tucker witnessed the plaintiff "standing in the doorway of 2127 Pitkin Avenue," plaintiff's residence and the site of the entry. *Id.* at ¶ 9. None of these facts is disputed by the plaintiff.

Whether these facts constitute exigent circumstances that justify a violation of the "knock and announce" rule is a difficult question. In determining whether "exigent circumstances" exist justifying a warrantless or unannounced entry, the Second Circuit has often looked to six "touch-

stones": "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry." *United States v. Brown,* 52 F.3d 415, 421 (2d Cir.1995) (applying touchstones in denying motion to suppress evidence due to unannounced entry); *United States v. MacDonald,* 916 F.2d 766, 769–70 (2d Cir. 1990). In addition, the Second Circuit has considered the additional factor of whether the officers had a reasonable belief that quick action was necessary to prevent the destruction of evidence. *See Brown,* 52 F.3d at 421. These factors are merely illustrative, not exhaustive, and the presence or absence of any one factor is not conclusive. *See id.* Indeed, under certain circumstances the presence of a solitary factor will suffice, while at other times it will require a combination of several of these factors. *MacDonald,* 916 F.2d at 770.

In the case at hand, a number of the touchstones were clearly satisfied: plaintiff was charged with numerous serious and violent crimes, the four arrest warrants issued by the D.C. Superior Court clearly demonstrated probable cause for the arrest, and Agent Tucker's sighting of plaintiff in the doorway rendered his presence in the premises virtually certain. On the other hand, there is no indication that Agent Tucker believed that destruction of evidence was likely. Moreover, the idea that Agent Tucker reasonably considered an immediate, unannounced entry necessary to prevent escape is dubious; it is unclear how the agents' announcement of their presence before entry would have enabled plaintiff to escape, particularly if the officers covered potential escape routes.

The most important question regarding the existence of exigent circumstances is whether Agent Tucker reasonably believed that the plaintiff was armed at the time of the unannounced entry. *See United States v. Artieri*, 491 F.2d 440, 444 (2d Cir.1974) (finding exigent circumstances justifying unannounced entry because agents reasonably believed that suspect was armed); *United States v. Iovanne*, 1993 WL 465392 (D.Conn.1993) (rejecting exigent circumstances argument to justify unannounced entry because of insufficient evidence that suspect was armed and dangerous); LaFave, 2 *Search & Seizure* § 6.2(d) (1995) ("[I]t is sufficient [exigent circumstances to justify an unannounced entry to arrest] that the officers have information tending to show that [the suspect] would actually be armed with [a firearm].") In this case, Agent Tucker was in possession of an FBI report describing plaintiff as "armed and dangerous," four active arrest warrants, two indictments for first degree murder perpetrated with firearms, a report informing him that plaintiff was previously arrested for numerous violent crimes, and information that plaintiff had threatened to commit murder to intimidate witnesses and avoid going to jail. On the other hand, other than the warnings that the suspect was "armed and dangerous" and the indictments for murder by firearm, Agent Tucker has not alleged that he had any specific information that plaintiff possessed a gun at the time of the unannounced entry. Whether, under these circumstances, Agent Tucker possessed sufficient information to create a reasonable belief that plaintiff was armed presents a difficult question, triggering conflicting Second Circuit precedent. *Compare United States v. Fields*, 113 F.3d 313, 323 (2d Cir.1997) (holding suspect's reputation for violence and drug "bagging" sufficient to create reasonable belief he was armed at time of entry) and *United States v. Cattouse*, 846 F.2d 144 (2d Cir. 1988) (holding that suspect's status as alleged drug dealer created reasonable belief he was armed at time of entry), *with*

*Iovanne*, 1993 WL 465392 at *11 (holding suspect's threat to kill undercover officer and attempts to obtain firearm insufficient to establish reasonable belief that suspect was armed at time of entry).

If this court was reviewing this case in the context of a motion to suppress evidence on the basis of the undisputed evidence before it, the court would be presented with a delicate decision—a judgment call—as to whether exigent circumstances existed. However, in the context of a motion for summary judgment on the grounds of qualified immunity, the question is not whether exigent circumstances actually existed, but whether a reasonable officer *could* have deemed exigent circumstances to exist. As the Supreme Court noted in *Anderson*, it is "[i]nevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that [exigent circumstances are] present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." 483 U.S. at 641, 107 S.Ct. 3034; *see also Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (holding that qualified immunity allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"). In this case, with at least three and arguably four of the Second Circuit's touchstone factors for "exigent circumstances" present, this court holds that a person in Agent Tucker's position *could* reasonably have deemed an unannounced entry justified. As a result, this court grants defendant Tucker summary judgment on the grounds of qualified immunity regarding plaintiff's unannounced entry claim.

Finally, plaintiff alleges that defendants Tucker, Reed, and Young exercised unreasonable force in executing plaintiff's arrest. In particular, plaintiff alleges that defendants cut a padlock on the door of the

grocery store, broke down exterior and interior doors, shot a dog with a tranquilizer dart, and entered the house carrying high-powered firearms and accompanied by dogs. As discussed above, the court has determined that defendants acted pursuant to a warrant and could reasonably have believed that exigent circumstances required an unannounced entry.

In order for defendants to make an unannounced entry into plaintiff's building to effect his arrest, it is readily apparent that defendants had to gain access to the premises. Faced with locked doors, defendants' entirely reasonable course of action was to make forcible entry by cutting padlocks and breaking down doors. It was equally reasonable, when confronted with a pit-bull dog in plaintiff's front hallway, for the defendants to take steps to temporarily sedate the dog. Finally, this court holds that Agent Tucker could reasonably have thought that the carrying of high-powered firearms and the use of police dogs during the arrest of a suspect wanted for four crimes, including two murders, constituted necessary safety precautions. As a result, this court must grant defendant Tucker's motion for summary judgment as to plaintiff's claim of unreasonable force during execution of his arrest and thus as to plaintiff's Fourth Amendment claim in its entirety.[13]

**ii. False Affidavit Claim**

In his false affidavit claim, plaintiff first asserts that Agent Tucker falsely alleged the existence of an indictment and a search warrant. However, after reviewing the affidavit that defendant Tucker provided to the magistrate judge on February 7, 1996, *see* Def. Exhibit H, this Court finds that plaintiff's complaint does not raise a genuine issue of material fact as to whether Tucker lied in the affidavit. In his affidavit to the magistrate, Agent Tucker merely alleged the existence of the warrant and indictment and did not opine as to their validity.[14] *See id.* Indeed, Agent Tucker attached copies of the indictment and warrant thereto, presumably so that the magistrate judge could draw his own conclusions as to their validity. Aside from his conclusory allegation that Tucker knew that the indictment was invalid, the plaintiff offers no evidence in support of his claim of false information.

Plaintiff also alleges that Tucker delivered an "invalid indictment" to plaintiff's criminal defense counsel. This court declines to view the obligatory provision to defense counsel of documents submitted to the court as a separate claim raising separate issues.

As discussed above, qualified immunity protects Agent Tucker from liability for his actions if he could have reasonably believed that his actions did not contravene an established federal right. *See Berman v. Turecki,* 885 F.Supp. 528, 534 (S.D.N.Y.1995). After viewing the affidavit and drawing all inferences in favor of the plaintiff, this court can come to no other conclusion than that defendant Tucker reasonably believed that the information in his affidavit was true. As a result, defendant Tucker's motion for summary judgment regarding plaintiff's claim of a false affidavit must be granted.

---

**13.** Where this court could dismiss *sua sponte* plaintiff's claims against defendants Reed and Young based on arguments contained in defendant Tucker's motion to dismiss, *see supra,* this court can not consider whether to grant defendants Reed and Young summary judgment without motions and affidavits from those defendants. As discussed above, whether to grant summary judgment based on qualified immunity depends on the information possessed by the particular law enforcement officer. This court has been presented with no evidence regarding the information possessed by defendants Reed and Young.

**14.** Plaintiff might argue that the warrant described in Tucker's affidavit bears a different date than the attached warrant. However, given the existence of another warrant bearing the date alleged in the affidavit, *see* Def. Exhibit E, the only rational inference is that Tucker made a clerical error, rather than a deliberate attempt to mislead.

4. Plaintiff's Motion for Leave to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), a party who wishes to amend a pleading after a responsive pleading has been served must obtain the agreement of the opposing parties or leave of court. Because defendant Tucker opposes acceptance of the amended complaint, the court must decide whether to grant leave. According to Rule 15(a), "leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a).

Although the intended relationship between plaintiff's amended complaint is not altogether clear, the amended complaint appears to be a completely new complaint alleging a different set of Fourth and Fifth Amendment violations. The allegations do not appear to be frivolous on their face. It would not serve the interests of justice to force the plaintiff to bring these allegations in a separate law suit. As a result, this court will grant plaintiff leave to amend his complaint.

**Conclusion**

For the reasons stated above, defendant Kohl's motion to dismiss is granted with prejudice with regard to plaintiff's Fourth Amendment, malicious prosecution, and deprivation of liberty claims, and without prejudice with regard to plaintiff's fabrication of evidence claim. Defendant Legal Aid Society's motion to dismiss is granted with prejudice. Plaintiff's claims of false imprisonment and false arrest against defendants Tucker, Reed and Young are dismissed without prejudice, subject to repleading if plaintiff succeeds in overturning his convictions. Defendant Tucker's motion for summary judgment with respect to plaintiff's Fourth Amendment and false affidavit claims is granted. The only remaining claims in plaintiff's original complaint are his Fourth Amendment claims against Detectives Reed and Young.

The defendants subject to plaintiff's amended complaint, Agent Tucker and Detectives Reed and Young, are directed to respond to the amended complaint. Responses must be filed with the court and served upon plaintiff within ten (10) days of receipt of a copy of this order.

SO ORDERED.